UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**REDELL BARRETT, JR.,**
 Plaintiff,

v.                                                    Case No. 4:20-cv-1039-CLM

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**
 Defendant.

## MEMORANDUM OPINION

 Redell Barrett, Jr. seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Barrett's application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA's Appeals Council then denied Barrett's request for review.

 Barrett argues: (1) that the Appeals Council erred in finding that there was no reasonable probability that two physical capacities evaluations from his treating physicians would change the outcome of the ALJ's decision, and (2) that once the evidence submitted to the Appeals Council is considered, the denial of benefits lacks the support of substantial evidence.

 As detailed below, Barrett hasn't shown that the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

## I.  STATEMENT OF THE CASE

### A.  Barrett's Disability, as told to the ALJ

Barrett was 62 years old at the time of the ALJ's decision. (R. 145). Barrett has a 10th grade education. (R. 180). And Barrett has past relevant work as a tin can laborer, Bobcat operator, industrial cleaner, and floor cleaner. (R. 728).

In his disability report, Barrett alleged that he couldn't work because he was suffering from COPD, arthritis, cataract in the right eye, and hemorrhage in the left eye. (R. 179). At the ALJ hearing, Barrett testified that he cannot work because of his vision, breathing problems, and hip pain. (R. 706). According to Barrett, his hip has caused him great pain ever since he was sideswiped in a hit-and-run. (R. 706–07). And Barrett said his hip pain usually runs from a 5/10 to 7/10 on the pain scale. (R. 708). Barrett's pain medication sometimes helps ease his pain, and it also helps if he sits and elevates his legs. (R. 709).

Barrett also suffers from knee pain, and he can sometimes hear it pop when he's walking. (R. 710). Barrett also has cataracts, but he can read an eye chart, unless he covers his right eye. (R. 712). And Barrett has COPD, which is worse in the summertime. (R. 714–15). But Barrett takes Symbicort and keeps an emergency inhaler with him, which "help[s] [him] out a lot." (R. 716). Barrett also has tinnitus, an "annoying ringing, that constantly rings in my ears." (R. 717).

Barrett can still drive, but it's scary for him to drive at night so he only drives during the day. (R. 712–13). And Barrett can stand in one spot for only 20 minutes before needing to sit down or move around. (R. 721). But Barrett can pick a full gallon of milk off the floor. (R. 722).

### B.  Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

3

### C. Barrett's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Barrett applied for disability and disability insurance benefits in January 2018, claiming that he was unable to work because of various ailments, including COPD, arthritis, and cataracts. After receiving an initial denial in May 2018, Barrett requested a hearing, which the ALJ conducted in October 2019. The ALJ ultimately issued an opinion denying Barrett's claims in November 2019.

At Step 1, the ALJ determined that Barrett was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined that Barrett suffered from the following severe impairments: arthritis left hip, right knee pain, chronic bronchitis, chronic obstructive pulmonary disease, high frequency hearing loss, bilateral cataracts, and left-hand osteoarthritis.

At Step 3, the ALJ found that none of Barrett's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Barrett's residual functional capacity.

The ALJ determined that Barrett had the residual functional capacity to perform medium work with these added limitations:

- Barrett can lift and carry 50 pounds occasionally and 25 pounds frequently.

- Barrett can stand and walk six hours in an eight-hour day and sit six hours in an eight-hour workday.

- Barrett can frequently climb ramps and stairs.

- Barrett can never climb ladders, ropes, and scaffolds.

- Barrett can frequently balance, stoop, kneel, crouch, and crawl.

- Barrett can frequently grasp with his left non-dominant hand.

- Barrett must avoid concentrated exposure to extreme heat, dusts, gases, odors, fumes, and other pulmonary irritants.

- Barrett cannot operate a commercial vehicle.

- Barrett must avoid all loud and noisy environments.

- Barrett must avoid hazards such as open flames, unprotected heights, and dangerous moving machinery.

At Step 4, the ALJ found that Barrett could not perform his past relevant work.

At Step 5, the ALJ determined that Barrett could perform jobs, such as linen room attendant and counter supply worker, that exist in significant numbers in the national economy and thus Barrett was not disabled under the Social Security Act.

### D.   The Appeals Council's Decision

Barrett requested an Appeals Council review of the ALJ's decision. As part of his request for review, Barrett submitted physical capacities evaluations from his treating physicians, Dr. Oluwole Akisanya and Dr. Muhammed Tariq. (R. 13, 33). The Appeals Council denied Barrett's request for review and did not exhibit this evidence, finding there was no "reasonable probability that it would change the outcome of the decision." (R. 2).

## II.     STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    LEGAL ANALYSIS

Barrett makes two arguments for why the SSA erred in denying his request for benefits. First, Barrett argues that the Appeals Council erred when it determined that there wasn't a reasonable probability that the physical capacities evaluations from Dr. Akisanya and Dr. Tariq would change the ALJ's decision. Second, Barrett asserts that once the physical capacities evaluations are considered, the decision to deny benefits lacks the support of substantial evidence. The court will address each argument in turn.

### A.     Appeals Council's Denial of Request for Review

Barrett first argues that the Appeals Council erred in denying his request for review because there's a reasonable probability that the physical capacities evaluations would have changed the outcome of the ALJ's decision. The Appeals Council will review an ALJ's decision if it "receives additional evidence that is new, material, relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5).

1. <u>Background</u>: Barrett submitted physical capacities evaluations from Dr. Oluwole Akisanya and Dr. Muhammed Tariq as "new evidence" for the Appeals Council to consider in the first instance. Dr. Akisanya is Barrett's doctor at First Care Medical Clinic. In his physical capacities evaluation, Dr. Akisanya checked that Barrett can frequently lift up to 5 pounds, occasionally lift between 6 and 20 pounds, and never lift 21 or more pounds. (R. 13). Dr. Akisanya also responded that Barrett can occasionally reach, handle, finger, and feel with his left hand. (*Id.*). Dr. Akisanya then said that Barrett can frequently reach, handle, finger, and feel with his right hand. (*Id.*). Dr. Akisanya also said he expected Barrett to be off-task 30% of the time in an 8-hour day and miss 15 days of work in a 30-day period. (*Id.*). According to Dr. Akisanya, Barrett can stand for less than 15 minutes at a time. (*Id.*). And Dr. Akisanya expected Barrett to be lying down, sleeping, or sitting with legs propped at waist level or above for 4 out of 8 hours in a daytime period. (*Id.*). According to Dr. Akisanya, Barrett's low back pain caused these limitations. (*Id.*).

Dr. Tariq is Barrett's doctor from Quality of Life. In his physical capacities form, Dr. Tariq checked that Barrett can frequently lift up to 5 pounds, occasionally lift between 6 and 20 pounds, and never lift 21 or more pounds. (R. 33). Dr. Tariq also responded that Barrett can occasionally reach, handle, finger, and feel with his left hand. (*Id.*). But, according to Dr. Tariq, Barrett can frequently reach, handle, finger, and feel with his right hand. (*Id.*). Like Dr. Akisanya, Dr. Tariq expected Barrett to be off-task 30% of the time in an 8-hour day and to miss 15 days of work in a 30-day period. (*Id.*). Dr. Tariq also stated that Barrett can stand for less than 15 minutes at a time and that he expected Barrett to lie down, sleep, or sit with legs propped at waist level or above for 4 out of 8 hours in a daytime period. (*Id.*). According to Dr. Tariq, Barrett's back pain and tinnitus caused these limitations. (*Id.*).

2. <u>Possibility v. Probability</u>: The Appeals Council didn't exhibit the new evidence from Dr. Akisanya or Dr. Tariq, finding "this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2). Barrett argues that the Appeals Council applied the

7

wrong standard of review because he must only show that there's a reasonable ***possibility*** that the new evidence would change the administrative result. This argument fails for two reasons.

First, though the Eleventh Circuit has applied a reasonable possibility standard to determine whether new evidence is material, the SSA's current regulations state that the Appeals Council will grant a request for review based on additional evidence only if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5). And the Appeals Council denied Barrett's request for review well after the SSA's current regulations—which use the word "probability"—took effect in May 2017. So the Appeals Council didn't err when it applied the reasonable probability standard to Barrett's new evidence. *See Clark v. Soc. Sec. Admin., Comm'r*, 848 F. App'x 858, 862 (11th Cir. 2021).

Second, the Eleventh Circuit has used the terms "reasonable possibility" and "reasonable probability" interchangeably when discussing the Appeals Council's evaluation of new evidence. *See, e.g.*, *Washington v. Soc. Sec. Admin., Comm'r,* 806 F.3d 1317, 1321–22 (11th Cir. 2015). So the court finds there's no material difference between the two standards.

2. Merits: As for the merits, Barrett argues that there's a reasonable probability the physical capacities evaluations would change the ALJ's decision because Dr. Akisanya and Dr. Tariq are his treating physicians. According to Barrett, this means that the SSA had to give their opinions substantial or considerable weight absent good cause to disregard their opinions. As this court has recently explained, this rule no longer applies to claims, like Barrett's, which were filed on or after March 27, 2017. *See Douglas v. Saul*, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021). Instead, under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 CFR § 404.1520c(a).

And even if the old rule applied, Barrett hasn't shown that the physical capacities evaluations would have changed the ALJ's decision.

First, the physical capacities evaluations "are conclusory and do not explain in any detail the reasons for [the] opinions." *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 881 (11th Cir. 2014).

Second, the court recognizes that Dr. Akisanya and Dr. Tariq's physical capacities forms align with each other—indeed, the answers to almost all the preprinted questions are identical. But the treatment records from Dr. Akisanya and Dr. Tariq don't support the restrictive limitations listed in the physical capacities forms. For example, Dr. Akisanya's treatment records say Barrett is "retired," state that Barrett doesn't need assistance with daily activities, and note that Barrett does his own grooming and meal prep. (R. 444, 449, 454, 459). And Dr. Akisanya's physical examinations documented generally unremarkable findings. (R. 446, 450–51, 455). Plus, as the Commissioner points out, Dr. Akisanya's treatment consisted of prescribing Barrett medication and advising him to keep exercising, rather than restricting his activities. (R. 444, 447, 449, 452, 457).

And though in April 2019 Barrett reported to Dr. Tariq that he was having issues with his hip, hands, and right knee, he also stated that his pain was currently 0/10 on the pain scale. (R. 662, 665). On examination, Dr. Tariq recorded normal findings except for a muscle spasm in Barrett's lumbar spine and hip tenderness. (R. 665). Dr. Tariq then recommended back exercises for Barrett's lumbago (R. 666). During a follow-up exam, Barrett rated his pain as a 0/10 on the pain scale and Dr. Tariq recorded normal examination findings. (R. 671–72). Dr. Tariq again recommended back exercises for Barrett's lumbago. (R. 672). In August 2019, Barrett told Dr. Tariq that his pain was a 1/10 on the pain scale. (R. 679). And Dr. Tariq again recorded normal physical examination findings. (R. 679–80).

Finally, the other evidence in the record contradicts the physical capacities evaluations. For example, objective findings don't support finding that Barrett's musculoskeletal symptoms or hearing issues would cause these extreme limitations. (R. 413–14, 460, 665). And Barrett reported that his medication improved his symptoms. (R. 459). Plus,

9

despite Barrett's symptoms, a State agency medical consultant found that he could perform a range of medium work. (R. 68–70).

In short, because the opinions in the physical capacities evaluations are conclusory, are not supported by Dr. Akisanya and Dr. Tariq's treatment notes, and are contradicted by other objective evidence, the Appeals Council didn't err when it found there's no reasonable probability this evidence would have changed the administrative result. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018) (affirming Appeals Council's refusal to consider two similar physical capacities forms that contradicted the objective medical records from the doctors and other medical sources).

### B. Consideration of Appeals Council Evidence

Barrett also asserts that once the physical capacities evaluations are considered, the ALJ's decision isn't supported by substantial evidence. This argument has two parts.

1. <u>Evaluation of evidence</u>: Barrett first argues that the Appeals Council erred because it didn't adequately explain why it rejected his request for review and instead "perfunctorily adhered" to the ALJ's decision. But when the Appeals Council denies a request for review, it is "not required to give a . . . detailed explanation or to address each piece of new evidence individually." *See id.* at 1309.

And here, the Appeals Council's denial letter shows that it adequately evaluated Barrett's new evidence and considered his request for review. The Appeals Council stated that it had denied Barrett's request for review because it "found no reason under our rules to review the Administrative Law Judge's decision." (R. 1). The Appeals Council then explained what those rules were and why it didn't exhibit Barrett's new evidence. (R. 1–2). As the Appeals Council explained, it found that the evidence "does not show a reasonable probability that it would change the outcome of the decision." (R. 2). That's all the explanation required. *See Hargress*, 883 F.3d at 1309 (finding explanation adequate when

Appeals Council stated only that the new records were about a later time, so they didn't "affect the decision about whether [the claimant was] disabled beginning on or before February 24, 2015"). In short, this argument fails.

      2. <u>Submissions would change result</u>: Barrett next asserts that his new evidence would have likely persuaded the ALJ to change his decision. This argument merely parrots Barrett's argument that the Appeals Council erred in denying his request for review. It also doesn't relate to Barrett's case. Instead, Barrett's initial brief states that "all submissions describe physical and psychological symptoms manifested by Howard, that due to their nature and severity, could bear on her condition during the relevant period between 7/1/05 the alleged onset date 3/11/11 and 1/25/13, the date of the decision." (Doc. 16 at 27). And despite the Commissioner pointing out that Howard isn't the claimant here, Barrett's reply brief once again says submissions from "Howard" show the evidence would persuade the ALJ to reverse his decision.[1] This argument that parrots arguments the court has already rejected and relates to a claimant other than Barrett fails to convince the court that the SSA erred in denying benefits.

---

[1] Barrett has also filed a supplemental authority that refers to a third claimant who isn't Barrett. (Doc. 20 at 8). The court reminds Barrett's counsel that it expects him to make unique arguments for each of his clients to ensure that they are presenting the issues most likely to succeed on appeal.

## IV.  CONCLUSION

In summary, the Appeals Council did not err in denying Barrett's request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on March 8, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE